# EXHIBIT A

# EXHIBIT A

# EXHIBIT A

JEFFREY S. LAWSON (SBN 99855)
jsl@svlg.com
KATHRYN E. BARRETT (SBN 162100)
keb@svlg.com
SILICON VALLEY LAW GROUP
50 W. San Fernando Street, Suite 750
San Jose, CA 95113
Phone: (408) 573-5700
Fax:    (408) 573-5701

Attorneys for Plaintiff G.P. Muggie & Sons, LLP

ENDORSED

2016 JUL 18  P 3: 05


Sharon Ulleseit

# SUPERIOR COURT OF OF CALIFORNIA
## COUNTY OF SANTA CLARA
### (UNLIMITED CIVIL CASE)

| | |
|---|---|
| G.P. MUGGIE & SONS, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>GALEN WOOTEN, Personal Representative of the Estate of Thomas Wooten; HAMMON PLATING CORPORATION, a California corporation, and DOES 1 – 50, inclusive,<br><br>Defendants. | Case No.: **16CV297747**<br><br>COMPLAINT FOR:<br><br>1) Breach of Contract;<br>2) Equitable Indemnity;<br>3) Hazardous Substance Account Act ("HSAA");<br>4) Failure to Give Notice (HSAA);<br>5) Declaratory Relief;<br>6) Trespass;<br>7) Negligence;<br>8) Waste. |

Plaintiff G.P. Muggie & Sons, LLC ("Plaintiff") alleges as follows

## INTRODUCTION

This is a civil action brought against the defendants for, *inter alia*, breach of lease, indemnity, nuisance, trespass, negligence and claims pursuant to the Hazardous Substance Account Act, California Health & Safety Code §25359.7 ("HSAA"), for (i) reimbursement from Defendants of Plaintiff's response costs attendant to the Defendants' release or threatened release of contaminants including, but not limited to, tetrachlorethene ("PCE"), trichloroethylene ("TCE"), and cis-1, 2-dichlorethane ("DCE")

FILE BY FAX

and their breakdown products (the "Hazardous Substances") at Plaintiff's property that has been occupied and operated by Defendants as a metal plating business since 1983, and (ii) a declaratory judgment as to Defendants' liability for future response costs attendant to their contamination of the property.

## I.

## THE PARTIES

1. Plaintiff is a limited liability company organized under the laws of the State of California, with its principle place of business in California. Plaintiff is the owner of the real property commonly known as 890 Commercial Street, Palo Alto, Ca (the "890 Property").

2. Plaintiff is informed and believes that Thomas Wooten was an individual who died on July 27, 2015 ("Wooten"). Plaintiff is informed and believes that, until February of 2015, Wooten was the sole shareholder of Defendant Hammon Plating Corporation ("Hammon"). Plaintiff is further informed and believes that Galen Wooten ("Trustee") is the personal representative of the estate of the deceased Thomas Wooten (the "Wooten Estate").

3. Defendant Hammon is a California Corporation doing business in Santa Clara County, California. Hammon operates a metal plating business at the 890 Property which Hammon leases from Plaintiff. It also operates its metal plating business at properties that are adjacent to the 890 Property: 855 Commercial Street, Palo Alto, California and 882 Commercial Street, Palo Alto, California (the "Adjacent Properties").

4. Plaintiff is ignorant of the true names and capacities of Defendants sued herein as Does 1 through 50, inclusive, and therefore sue these Defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when and if ascertained. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged and that Plaintiffs' damages were proximately caused by said Defendants.

5. Plaintiff is further informed and believes that at all times herein mentioned, all of the Defendants were the agents, employees and servants, successors in interest and alter egos of the other Defendants and were acting within the scope and agency of their employment and with the permission

and consent of each Defendant. Plaintiff further alleges that each of the Defendants was in some manner responsible for the acts, conduct and omissions alleged in this Complaint and are each is jointly and severally liable to Plaintiff for damages as complained of in this Complaint.

## II.

## VENUE

6. Venue is proper in the California Superior Court, County of Santa Clara where the 890 Property, which is the subject matter of this action, and the Adjacent Properties where Hammon operates its metal plating business, are located. The lease between Plaintiff and Wooten and Hammon for the 890 Property was entered into in Santa Clara County and that is where the environmental investigation and clean-up of the Hazardous Substances at the 890 Property, to be overseen by the Department of Toxic Substances Control (the "DTSC"), must occur.

## III.

## GENERAL ALLEGATIONS

**A. Site Ownership, Leases and Hammon's Metal Plating Operations:**

7. Plaintiff is the owner and lessor of the 890 Property.

8. Plaintiff is informed and believes and thereon alleges that Defendants Hammon and Wooten are the owners or former owners of the Adjacent Property at 855 and 882 Commercial Street, Palo Alto, California.

9. Hammon and Wooten, in his individual capacity, entered into a written lease with Plaintiff's predecessors-in-interest, the Munsey Family Trust, on March 17, 1983 to lease the 890 Property for Hammon's metal plating business (the "1983 Lease"). The 1983 Lease was extended over the years, including, but not limited to a written lease extension amendment dated January 13, 2003 ("2003 Lease Extension"). On October 1, 2011 Plaintiff entered into a new written lease with Hammon and Wooten, again in his individual capacity (the "2011 Lease"). The 2011 Lease provided for an expiration date of September 30, 2014 ("Lease Expiration Date").

10. From 1983 to the present, Hammon and Wooten leased the 890 Property for the operation of their metal plating business. Plaintiff is informed and believes that Hammon and Wooten also owned and operated their metal plating business at the Adjacent Properties. Plaintiff is informed and believes

that during the time that Hammon leased the 890 Property, it possessed, used, stored, pumped and transported Hazardous Substances including, but not limited to PCE and TCE at the 890 Property. Plaintiff is further informed and believes that between 1983 and the present, Hammon released these Hazardous Substances by way of sudden and accidental leaks, spills and pumping, as well as improperly storing and disposing of the Hazardous Substances in connection with Hammon's manufacturing processes. The Hazardous Substances, including TCE, PCE and DCE have been recently discovered in the soil, soil gas, indoor air and groundwater beneath the 890 Property and the Adjacent Properties. The exact nature and extent of the contamination of the Property is still unknown to Plaintiff. The contamination was created or negligently permitted to remain on the land by Defendants.

11. The 2003 Lease Extension provides that Hammon and Wooten, as lessees:

> [R]epresents and warrants that he/it will not violate any federal, state or local law, ordinance or regulation relating to Hazardous Substances (defined below)…on, under or about the premises, however caused, including but not limited to soil and groundwater condition. Upon termination of the lease, Lessee [Hammon and Wooten] shall be solely responsible for obtaining all appropriate environmental and industrial hygiene compliance closure certifications as then required by any federal, state or local governmental agency, all such closure certifications to be at the sole expense of the Lessee.

12. The 2011 Lease expired on September 30, 2014, the Lease Expiration Date. Currently, Hammon and Wooten are occupying the 890 Property on a month to month basis.

13. Article 33.15 of the 2011 Lease provides that Hammon and Wooten are jointly and severally liable for the obligations under the 2011 Lease.

14. The 2011 Lease, at Article 11, contains provisions relating to the use, investigation and remediation of Hazardous Materials. Paragraph 11.6 of the 2011 Lease states that Tenant is required to cause to be prepared a Phase 1 and 2 Environmental Assessment of the 890 Property. Article 11.4 of the 2011 Lease states that any and all remediation work shall be complete and approved by all regulatory agencies on or before the Lease Expiration Date of September 30, 2014. Article 11.4 states:

> Tenant will be solely responsible for investigation and fully remediating any discharge, disposal or release of Hazardous Materials at, on, under or about the Premises caused in whole or in part by Tenant or any of Tenant's agents, contractors, employees, guests, invitees, servants, or any other entity acting on Tenant's behalf, at Tenant's request or with Tenant's permission, at Tenant's sole cost and expense and regardless of whether the materials are present at

10477473.DOCX

>levels that require remediation under applicable laws. ………….. **Any and all remediation work shall be complete and approved by all regulatory agencies on or before the Lease Expiration Date.** [Emphasis Added].

The Lease Expiration Date was September 30, 2015. Defendants have failed to complete the remediation work required under the 2011 Lease.

15. Plaintiff is informed and believes that, in December of 2013, Hammon retained an environmental consulting company to commence testing of the soil and groundwater at the 890 Property and the Adjacent Properties. Plaintiff is informed and believes that Hammon, in 2013, submitted a Request for Agency Oversight Application to the DTSC to oversee remediation of the 890 Property and the Adjacent Properties. Plaintiff is informed and believes that Hammon reported to the DTSC that some testing had been conducted at the 890 Property and the Adjacent Properties and it had found Hazardous Substances including PCE, DCE, TCE and copper in various testing of the soil, groundwater and soil vapors at the 890 Property and the Adjacent Properties. Plaintiff is informed and believes that all of the Hazardous Substances identified above are at levels requiring remedial action.

16. On September 30, 2014 the 2011 Lease expired.

17. In November 2014, Hammon, as the responsible party, entered into an Agreement for Facility-Initiated Corrective Action with the DTSC for the DTSC oversite of remedial action to be conducted by Hammon at the 890 Property and the Adjacent Properties (the "DTSC Oversight Agreement"). Although some investigation commenced before the Lease Expiration Date, Hammon and Wooten failed to complete the substantial remediation work before the Lease Expiration Date as required by the 2011 Lease or thereafter.

18. Plaintiff is informed and believes that on or about February 18, 2015 Wooten sold his shares in Hammon to AMC for a purchase price of approximately $9,339,000. Plaintiff is informed and believes that the sale of Wooten's Hammon shares included title to the Adjacent Properties. Plaintiff is informed and believes that Hammon continues to operate at the 890 Property and Adjacent Properties as metal plating operations. Plaintiff is informed and believes that Hammon has placed $1,100,000 in an escrow account for the purpose of remediation of the 890 Property and Adjacent Properties (the "Remediation Funds"). Plaintiff is informed and believes that Hammon paid $2 million of the purchase price for Wooten's shares of Hammon to Wooten and is withholding the balance, including the

$1,100,000 Remediation Funds. Plaintiff is informed and believes that Hammon has ceased any remediation of the Hazardous Substances that have been identified at the 890 Property. Plaintiff is informed and believes that Hammon and Wooten are in a dispute as to the allocation of responsibility to remediate the 890 Property and the Adjacent Properties and, consequently, both Defendants continue to breach their lease obligations to complete the remediation of the Hazardous Substances that they released at the 890 Property. Plaintiff is informed and believes that Defendant Hammon has sold the Adjacent Properties to an unknown entity.

19. Plaintiff is informed and believes that Wooten died on July 27, 2015. His estate is being administered by Defendant, Trustee Galen O. Wooten, who is the personal representative of the Wooten estate.

20. The 890 Property continues to be impacted by the presence of TCE, PCE and other Hazardous Substances that are closely regulated by the State of California and the federal government and are designated as Hazardous Substances pursuant to the federal law at 42 U.S.C. §9601(4), 6903(5) and (27) and California State Law under the California Health & Safety Code §25281(g).

21. All groundwater within the State of California, including the groundwater in, at and around the 890 Property and all groundwater that has been adversely impacted by contamination emanating from the 890 Property is "water of the state" pursuant to California Water Code §13050.

22. Each Defendant caused or contributed to the past or present handling, storage, treatment, transportation, generation, release or disposal of Hazardous Substances in the environment in, at, and around the 890 Property and failed to prevent, remediate or abate the Hazardous Substances despite being legally required to do so.

23. The risk of contaminated groundwater and contaminated soil is that dangerous chemicals can enter the public waters endangering humans, animals and plants of the State of California. Moreover, the groundwater is owned by the State of California, and, accordingly, the contamination of groundwater by Defendants constitutes harm to third parties. The contaminated soil and soil gas at the 890 Property creates a vapor risk than can permeate the building on the 890 Property and cause health risks to occupants of the 890 Property. The contamination from Defendants release and mishandling of Hazardous Substances remains on the 890 Property.

COMPLAINT
6

10477473.DOCX

24. Defendants have made ongoing promises and representations to Plaintiff that they would remediate the 890 Property, leading Plaintiffs to believe that they will investigate and remove the contamination from the 890 Property. Defendants asked Plaintiff to grant them a license for their environmental consultant to enter the 890 Property to investigate the nature and scope of Hazardous Substances that Defendants released at the 890 Property. However, remediation activities are not proceeding and Plaintiff is informed and believes that the Defendants each dispute their financial responsibility for the remediation of the 890 Property. Plaintiff is informed and believes that Defendants have concealed their intent to avoid clean-up of the Hazardous Substances at the 890 Property.

25. Defendant Hammon has filed a verified complaint in the Superior Court of the State of California, Santa Clara County, Case Number 16CV295958 wherein Hammon is disputing its obligation to proceed with the investigation and removal of the Hazardous Substances at the Adjacent Properties and has claimed that it has been unable to obtain financing due to some act and/or omission of Wooten. Plaintiff is informed and believes that Hammon refuses to pay for the removal of the Hazardous Substances at the 890 Property. Plaintiff is informed and believes that Wooten, though Trustee, has refused to pay for the investigation and removal of Hazardous Substances at, on or emanating from the 890 Property. Specifically, on or about February 10, 2016 Plaintiff timely made its claim against the Wooten Estate for the cost of investigation and removal of the Hazardous Substances at the 890 Property based upon environmental laws and the 2011 Lease which allocates responsibility for the clean-up activities, jointly and severally, to Wooten and to Hammon (the "Estate Claim"). On April 5, 2016, the Trustee filed and served, without explanation, a Notice of Disallowance of Claim. On April 26, 2016, Plaintiff and the Trustee entered into a Stipulation to extend time for Plaintiff to file this action against the Trustee of the Estate of Wooten up to in including July 19, 2016 ("Stipulation").

26. Plaintiff is informed and believes that there is a danger that Defendants will dissipate their assets and make themselves financially unable to pay for the necessary investigation and remediation of the 890 Property.

27. The contamination was created or negligently permitted to remain on the 890 Property by Defendants.

28. As a result of the contamination caused and maintained by Defendants, Plaintiffs have

been required to incur response costs necessary to investigate and remediate the property in an amount not yet fully ascertained.

29. Plaintiff is informed and believes that Defendants, and each of them, have failed to meet their contractual, statutory, and common law obligations and failed to exercise due care in the conduct of their business by allowing the release Hazardous Substances, waste and contamination into the environment at the 890 Property and Adjacent Properties, and by failing to properly investigate and remediate the Hazardous Substances, waste and contamination as required under the 2011 Lease.

## FIRST CLAIM FOR RELIEF

### Breach of Contact

30. Plaintiff hereby incorporates by reference each and every allegation and/or assertion set forth above as though fully set forth herein.

31. Defendants Hammon and Wooten entered into a series of written leases, amendments and extensions including the 2003 Lease and the 2011 Lease with Plaintiff. Defendants are contractually obliged under the written lease agreements, including the 2003 Lease and the 2011 Lease to be solely responsible for the investigation and remediation of any and all Hazardous Substances at the 890 Property which removal was to be completed on or before September 30, 2015, the Lease Expiration Date.

32. Defendants have breached their obligations under the 2003 Lease and the 2011 Lease in that they have failed and refused to remediate the Hazardous Substances that they have released at the 890 Property and they continue to allow the presence of Hazardous Substances at the 890 Property.

33. Defendants have further breached their obligations under the 2011 Lease by filing to give written notice to Plaintiff of the release of Hazardous Substances at the 890 Property.

34. Also contained within the lease are provisions for fees. As a result of the breach of the Lease by Defendants, Plaintiff has been forced to retain counsel and expend fees and costs to enforce the terms of the 2011 Lease.

35. Defendants have further beached their obligations under the 2011 Lease by committing waste at the 890 Property, as alleged herein, through causing and contributing to the contamination at the 890 Property.

36. Plaintiff has performed all conditions, covenants and promises required to be performed by them under the 2011 Lease.

37. As a direct and proximate result of Defendants' breaches of the 2003 and 2011 Leases, as set forth herein, including but not limited to causing the release of Hazardous Substances at the 890 Property and failing to remove such Hazardous Substances from the soil, soil vapor, indoor air and groundwater at and emanating from the 890 Property, Plaintiff has been damaged and will continue to suffer damages, including property damage, attorneys' fees and expert witness fees.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## SECOND CLAIM FOR RELIEF

### Equitable Indemnity/Contribution

38. Plaintiff hereby incorporates by reference each and every allegation and/or assertion set forth above as though fully set forth herein.

39. The costs incurred by Plaintiff in investigating, monitoring and remediating contamination at the 890 Property are and will be the result of Defendants' unlawful release of Hazardous Substances and other contaminants. Plaintiff alleges that Defendants are legally responsible for the contamination on the Property and are therefore responsible for the costs of investigating, monitoring and remediating the contamination. Further, any liability that may be imposed upon Plaintiff by any regulatory agency or third party relating to the release of Hazardous Substances at the 890 Property, is the result in whole or in part, of the acts or omissions of Defendants.

40. As between Plaintiff and Defendants, Defendants are solely responsible for all costs and expenses to investigate and clean up the contamination at and around the 890 Property.

41. As between Plaintiff and Defendants, Defendants are responsible for any legal or administrative actions that have been brought or may be brought in the future by any public or private persons concerning or related to the presence of contaminants at and around the 890 Property.

42. In the event that Plaintiff is adjudged liable for any relief requested in any judicial or administrative action, arising out of or related to the presence of contaminants or Hazardous Substances at and around the 890 Property, brought against Plaintiff by any persons or entities, public or private, such liability is purely secondary, imputed or technical. Primary and actual liability attaches to

Defendants and is a direct and proximate result of the acts, omissions and conduct of Defendants.

43. As a direct and proximate result of the acts, omissions and conduct of Defendants, as herein alleged, Defendants are bound and obligation to indemnify and hold harmless Plaintiff from and against all response costs arising out of or relating in any way to the contamination at the 890 Property and any other costs heretofore or hereafter incurred by Plaintiff in responding to the alleged releases or threatened releases of Hazardous Substances at the 890 Property.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

### THIRD CLAIM FOR RELIEF

#### Hazardous Substance Account Act ("HSAA")

44. Plaintiff hereby incorporates by reference each and every allegation and/or assertion set forth above as though fully set forth herein.

45. The HSAA was enacted to encourage the expedient cleanup of Hazardous Substances in the environment. Plaintiff is informed and believes and thereon alleges that the Defendants, and each of them, are responsible parties within the meaning of the Hazardous Substance Account Act (Health & Safety Code § 25300 et seq. and §25323.5(a) (1)).

46. Defendants are each a "liable person" as defined in the HSAA, Section 25323.5(a) in that Defendants are operators and lessees of a facility at which Hazardous Substances, including but limited to PCE and TCE, are used, stored and disposed of by Defendants.

47. Plaintiff is informed and believes, and on that basis alleges, that Defendants used, stored, transported, treated and disposed of Hazardous Substances at the 890 Property and otherwise operated the 890 Property during the time that the Hazardous Substances were released at the 890 Property and the Adjacent Properties. There have been releases or threatened releases of Hazardous Substances into the environment at, under, and around the 890 Property.

48. Plaintiff seeks recovery and/or contribution from Defendants for all past, present and future response costs incurred in response to a release and threat of release of Hazardous Substances affecting the 890 Property. Plaintiff has incurred and will continue to incur response costs, including costs of investigation, removal and remedial costs in the investigation and abatement of the releases and threatened releases of Hazardous Substances at the 890 Property.

49. As a direct and proximate result of Defendants' acts and omissions at the 890 Property and the Adjacent Properties, they have caused and contributed to the Hazardous Substance contamination at, under and around the 890 Property. Plaintiff has incurred response costs including costs due to Defendants' release of Hazardous Substances at the 890 Property.

50. Plaintiff has given the California Department of Toxic Substances Control (DTSC) notice of the commencement of this action, as required by California Health & Safety Code §25363(d).

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## FOURTH CLAIM FOR RELIEF

### HSAA Violation of Obligation to Give Notice

### Cal. Health & Safety Code Section 25359.7

51. Plaintiff hereby incorporates by reference each and every allegation and/or assertion set forth above as though fully set forth herein.

52. Plaintiff is informed and believes that Defendants knew or should have known of the release of Hazardous Substances at the 890 Property and Defendants willfully failed to provide any written notice of the releases. In violation of the 2011 Lease and California Health & Safety Code §25359.7, Defendants failed to give written notice to Plaintiff of any releases of, or the presence of, Hazardous Substances at the 890 Property.

53. Defendants have failed to promptly commence and complete the removal of, or taking other appropriate remedial action with respect to the Hazardous Substance release.

54. Plaintiff is entitled to civil penalties to be proven at trial.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## FIFTH CLAIM FOR RELIEF

### Declaratory Relief

55. Plaintiff hereby incorporates by reference each and every allegation and/or assertion set forth above as though fully set forth herein.

56. An actual, substantial legal controversy now exists between Plaintiff and Defendants concerning their respective rights and duties in that Plaintiff alleges that Defendants, and each of them, are liable for the contamination at and emanating from the 890 Property and that Defendants, and each of

them, are obligated to pay for the costs of investigation and remediation of the Hazardous Substances released at the 890 Property. Plaintiff is informed and believes that Defendants dispute responsibility and are also in a dispute with each other as to responsibility for clean-up and thus, no Defendants have not remediated the 890 Property.

57. The dispute and controversy is capable of full and final adjudication by the court. Plaintiff seeks a judicial determination of the Parties' respective rights and duties with respect to the obligation to investigate and clean-up the 890 Property of the contaminants abiding at and emanating from and to the 890 Property and as to the timing of such clean-up.

58. A judicial declaration is necessary and appropriate under the present circumstances in order that Plaintiff may ascertain its rights and duties.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

### SIXTH CLAIM FOR RELIEF

#### Trespass

59. Plaintiff hereby incorporates by reference each and every allegation and/or assertion set forth above as though fully set forth herein.

60. Defendants caused and allowed Hazardous Substances to be released at the 890 Property. Defendants, without the consent of plaintiff, have allowed the contamination to remain on the 890 Property.

61. Plaintiff is the owner of the 890 Property. This release of Hazardous Substances is environmental contamination, which is prohibited under the 2003 Lease and the 2011 lease and is beyond the scope of Defendants' right to use and/or occupy the Property under either lease. The Hazardous Substances released by Defendants interfere with Plaintiff's property interest, and therefore constitutes a trespass. This trespass has not and cannot be completely abated. The contamination continues to infect the 890 Property and Plaintiff is informed and believes that Defendants' conduct on the Adjacent Properties has also caused Hazardous Substances to flow from the Adjacent Properties to the 890 Property.

62. The presence of the building on the 890 Property prevents all the contamination from being removed. The presence of the Hazardous Substances at the 890 Property and flowing from the

Adjacent Properties to the 890 Property creates a permanent stigma and diminution in value of the 890 Property.

63. This release of Hazardous Substances constitutes unlawful and wrongful conduct by Defendants and interferes with Plaintiff's interest in the 890 Property.

64. As a proximate result of the above-described activities, including Defendants' conduct that exceeds the scope of their leases, Plaintiff's property interest is substantially impaired and interfered with in that Plaintiff has been forced to undertake response actions in response to the contamination by Defendants. Plaintiff has further suffered damages related to investigative costs, diminution in fair market value, impairment of ability to sell the 890 Property while Defendants' Hazardous Substances abide on the 890 Property, and damages associated with the stigma caused by the 890 Property's condition.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

### SEVENTH CLAIM FOR RELIEF

#### Negligence

65. Plaintiff hereby incorporates by reference each and every allegation and/or assertion set forth above as though fully set forth herein.

66. Defendants had a duty to exercise due care in operating and maintaining the metal plating business at the 890 Property and Adjacent Properties. At various times from 1983 to the present Defendants intentionally, negligently, suddenly and accidently caused or contributed to the presence of Hazardous Substances, Hazardous Waste and/or solid waste in the environment, including soil, land, subsurface strata, air, vapor, groundwater, surface water and the waters of the State of California at the 890 Property. Defendants, who operated a metal plating business at the 890 Property and Adjacent Properties and used Hazardous Substances (including PCE and TCE) knew or through the exercise of reasonable diligence should have known, that these are Hazardous Substances and required care in handling. Defendants were negligent and despite the ability to prevent the releases, did not prevent or abate the releases. Defendants had the ability to monitor their activities and to prevent and abate the release of contamination.

67. Defendants breached their duty by failing to exercise due care by not following the law or

safe industry practices in storing, handling, treating, and disposing of Hazardous Substances used in their metal plating business, and in failing to report the information known to Defendants to Plaintiff and to governmental authorities and in failing to investigate and remediate the 890 Property to insure its environmentally safe condition as required by law.

68. Defendants breached their duty by failing to exercise due care in monitoring and requiring their agents and employees to follow the law in storing, handling, treating, and disposing of Hazardous Substances used in their metal plating business and in failing to report the information known to defendants to governmental authorities and in failing to investigate and remediate the 890 Property to insure its environmentally safe condition as required by law.

69. The actions of Defendants in spilling, releasing and not investigating and remediating the releases of Hazardous Substances were, and continue to be, in violation of local, State and Federal laws, including, but not limited to, the California Health & Safety Code § 25100, et seq.; as well as other applicable codes, regulations, ordinances, and statutes. The violations by Defendants' and their breach of their duty of care proximately caused Plaintiff's injury. The injury to Plaintiff resulted from an occurrence(s) that State and Federal environmental laws were designed to prevent. Plaintiff is within the class intended to be protected by the State and Federal environmental laws. Accordingly, Plaintiff is entitled to the application of the doctrine of negligence per se.

70. As a direct and proximate result of the negligence of Defendants, Plaintiff has suffered damages and losses necessary to evaluate contamination of the 890 Property. Plaintiff has suffered damage related to investigating costs, diminution in fair market value of the 890 Property, diminished ability to resell the 890 Property and damages associated with the stigma to the 890 Property caused by its contamination by Defendants' negligent operations.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

### EIGHTH CLAIM FOR RELIEF

**Waste**

71. Plaintiff hereby incorporates by reference each and every allegation and/or assertion set forth above as though fully set forth herein.

72. Pursuant to the terms of the written 2011 Lease, the 2003 Lease, at various times

Defendants and each of them entered into and maintained possession of the 890 Property.

73. As tenants leasing the 890 Property Defendants had a duty to preserve and protect the 890 Property.

74. Plaintiff is informed and believes that Defendants have caused injury to the 890 Property by committing waste in the form of causing or contributing to the release of Hazardous Substances that contaminate the soil, soil vapor and groundwater at the 890 Property.

75. Each act and omission by Defendants as alleged herein was done intentionally and over the objection of Plaintiff or its predecessors-in-interest in contravention to the terms of the leases and in violation of State and Federal environmental laws. Defendants willfully and malicious engaged in such conduct with the full knowledge that it would result in substantial damage to the 890 Property and Plaintiff's interest in the 890 Property. Plaintiff is entitled to recover treble damages from Defendants under California Code of Civil Procedure §732.

76. As a direct and proximate result of Defendants' waste, Plaintiff has been damaged and will continue to suffer damages including environmental remediation costs and fees.

## III.

## PRAYER FOR DAMAGES

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

1. Compensatory damages according to proof, including but not limited to investigation, clean-up, and remedial costs expended by Plaintiff; late payment penalties; loss of profits, economic loss, loss of use, diminution in fair market value, damages related to the inability to sell and or re-lease the 890 Property, and stigma damages;

2. Response, removal and remedial action costs;

3. Pre-judgment interest at the legal rate as provided by law;

4. Interest at the legal rate as provided by law.

5. Treble damages;

6. Incidental and consequential damages according to proof;

7. Costs of suit;

8. For retention of jurisdiction of this action by this court after entry of the requested

declaratory judgment, for the granting to Plaintiff such further relief against Defendants as may be necessary or proper to effectuate the declaration of this Court;

9. For a declaration that Defendants are solely and entirely liable in any legal or administrative actions which have been brought or may be brought by any persons or entities, public or private, concerning or related to the continuing presence of Hazardous Substances at the 890 Property;

10. For a declaration that, in the event Plaintiff is adjudged liable for any or all relief requested in any judicial or administrative action, arising out of or related to the presence of Hazardous Substances on the 890 Property, brought against Plaintiff by any persons or entities, public or private, such liability is purely, solely and actually the liability of these Defendants;

11. For a declaration that these Defendants are liable to Plaintiff to contribute to and reimburse Plaintiff, or in the alternative indemnify Plaintiff, for all damages and costs suffered or to be suffered by Plaintiff resulting from or related in any way to the continuing presence of Hazardous Substances on the 890 Property;

12. For declaratory judgment of Defendants' sole and entire liability for such additional costs that will be incurred in monitoring and remediating the 890 Property, plus interest, as may be incurred by Plaintiff in connection with any future investigation and remediation of the 890 Property; and

13. For such other and further relief as this court deems just and proper.

Dated: July 18, 2016

SILICON VALLEY LAW GROUP

By: _____
Jeffrey S. Lawson
Kathryn E. Barrett
Attorneys for Plaintiff
G.P. MUGGIE & SONS, LLC