UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| G.P. MUGGIE & SONS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>HAMMON PLATING CORPORATION, et al.,<br><br>Defendants. | Case No. 16-CV-05908-LHK<br><br>**ORDER GRANTING MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**<br><br>Re: Dkt. No. 56 |

Plaintiff G.P. Muggie & Sons, LLC ("Plaintiff") sues Defendants Hammon Plating Corporation ("Hammon Plating"), and Galen Wooten, personal representative of the estate of Thomas Wooten ("Wooten"), for causes of action arising out of Defendants' release of certain contaminants at Plaintiff's property. Before the Court is Plaintiff's motion for leave to file a Second Amended Complaint. ECF No. 56. Having considered the parties' submissions, the record in this case, and the relevant law, the Court GRANTS Plaintiff's motion for leave to file a Second Amended Complaint.

**I.  BACKGROUND**

**A. Factual Background**

Hammon Plating is a "California Corporation" that operates a metal plating business in

1
Case No. 16-CV-05908-LHK
ORDER GRANTING MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

Santa Clara County, California. ECF No. 33 ("FAC") ¶ 3. Specifically, Hammon Plating operates its business at three adjacent properties in Palo Alto: 855 Commercial Street, 882 Commercial Street, and 890 Commercial Street. *Id.* Until February 2015, Wooten was Hammon Plating's sole shareholder. *Id.* ¶ 2. Wooten died on July 27, 2015. *Id.*

Although Hammon Plating and Wooten were the "former owners" of the properties at 855 and 882 Commercial Street and Hammon Plating recently sold those properties, "Plaintiff is the owner and lessor" of 890 Commercial Street. *Id.* ¶¶ 9–10, 21. In 1983, Hammon Plating and Wooten entered into a lease (the "1983 Lease") with Plaintiff's predecessors-in-interest, the Munsey Family Trust, to lease 890 Commercial Street. *Id.* ¶ 11. The 1983 Lease was extended multiple times, including by a written lease extension dated January 13, 2003 (the "2003 Lease"). *Id.* Then, on October 1, 2011, Plaintiff entered into a new lease with Hammon Plating and Wooten (the "2011 Lease") that provided for an expiration date of September 30, 2014. *Id.* Currently, Hammon Plating is "occupying the 890 Property on a month to month basis." *Id.* ¶ 14.

Plaintiff alleges that under the 2003 Lease and the 2011 Lease, Hammon Plating and Wooten "are contractually obligated . . . to be solely responsible for the investigation and remediation of any and all Hazardous Substances at the 890 Property," and to complete any removal of these substances by September 30, 2014, the date on which the 2011 Lease expired. *Id.* ¶ 33. Plaintiff also alleges that (1) "during the time that Hammon [Plating] and Wooten leased and operated the 890 Property, they possessed, used, stored, pumped and transported Hazardous Substances including, but not limited to," tetrachlorethene ("PCE"), trichloroethylene ("TCE"), and cis-1, 2-dichlorethane ("DCE") at 890 Commercial Street; (2) Hammon Plating "released these Hazardous Substances by way of sudden and accidental leaks, spills and pumping, as well as improperly storing and disposing of the Hazardous Substances in connection with Hammon's manufacturing processes"; and (3) "[t]he Hazardous Substances, including TCE, PCE and DCE have been recently discovered in the soil, soil gas, indoor air and groundwater beneath the 890 Property" and the properties at 855 and 882 Commercial Street. *Id.* ¶ 12.

Specifically, Plaintiff states that in December 2013, Hammon Plating retained a consulting

2
Case No. 16-CV-05908-LHK
ORDER GRANTING MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

company to test the soil and groundwater at 855, 882, and 890 Commercial Street properties. *Id.*¶ 17. Further, in 2013, Hammon Plating submitted a "Request for Agency Oversight Application" to the California Department of Toxic Substances Control ("DTSC") "to oversee remediation" of the properties, and reported to the DTSC that after some testing, Hammon Plating had found PCE, DCE, TCE, copper, and other "Hazardous Substances" in the soil, groundwater, and soil vapors at the properties. *Id.* Then, in November 2014, Hammon Plating "entered into an Agreement for Facility-Initiated Corrective Action with the DTSC for the DTSC oversite of remedial action to be conducted by Hammon" at the Commercial Street properties. *Id.* ¶ 19. However, Plaintiff states that "[a]lthough some investigation [into the Hazardous Substances] commenced before the Lease Expiration Date [of September 30, 2014], Hammon [Plating] and Wooten failed to complete the investigation or commence any of the substantial remediation work before the Lease Expiration Date as required by the 2011 Lease or thereafter." *Id.*

Plaintiff alleges that on February 18, 2015, Wooten sold all of his shares in Hammon Plating to an entity called "AMC" for approximately $9,339,000. *Id.* ¶ 20. Plaintiff further alleges that Hammon Plating continues to operate its metal plating business out of the properties at 855, 882, and 890 Commercial Street, and that Hammon Plating "has placed $1,100,000 in an escrow account for the purpose of remediation of" the properties at 855 and 882 Commercial Street. *Id.* However, Plaintiff states that "Hammon [Plating] has expended no funds for remediation . . . [of] the 890 Property and that it does not intend to commence remediation based upon an erroneous claim that the structure at [890 Commercial Street] will be demolished." *Id.*

Thus, Plaintiff alleges that Hammon Plating and Wooten "continue to breach their lease obligations by failing to commence or to complete the remediation of the Hazardous Substances that they released at the 890 Property." *Id.* ¶ 21. As a result, "[t]he 890 Property continues to be impacted by Hammon's operations at the 890 Property . . . , including the ongoing presence of TCE, PCE, and other Hazardous Substances that are closely regulated by the State of California and the federal government." *Id.* ¶ 23. Plaintiff states that Hammon Plating and Wooten "have made ongoing promises and representations to Plaintiff that they would remediate the 890

3

United States District Court
Northern District of California

1 Property," and have "asked Plaintiff to grant them a license for their environmental consultant to

2 enter the 890 Property to investigate the nature and scope of Hazardous Substances that [Hammon

3 Plating and Wooten] released at the 890 Property," but that "the investigation is inadequate and

4 remediation activities are not proceeding." *Id.* ¶ 26.

### B. Procedural History

On July 18, 2016, Plaintiff filed its original complaint against Defendants in Santa Clara County Superior Court. ECF No. 1-1 at 2. The original complaint asserted eight causes of action, including: (1) breach of contract; (2) equitable indemnity/contribution; (3) violation of the Hazardous Substance Account Act ("HSAA"), Cal. Health & Safety Code § 25323.5(a); (4) violation of HSAA's notice requirement in Cal. Health & Safety Code § 25359.7; (5) declaratory relief; (6) trespass; (7) negligence; and (8) waste. *Id.* at 8–15. On October 12, 2016, Hammon Plating removed the case to this Court. ECF No. 1. That same day, Hammon Plating filed a cross-claim against Galen Wooten for contractual indemnity, equitable indemnity, comparative indemnity, equitable apportionment of fault, and declaratory relief. ECF No. 3. On November 2, 2016, Galen Wooten answered Hammon Plating's cross-claim and asserted a third-party complaint for contractual indemnity against AMC Acquisition Corporation ("AMC"), who had purchased all outstanding shares of Hammon Plating from Wooten in February 2015. ECF No. 13. Then, on December 19, 2016, Hammon Plating answered Plaintiff's original complaint. ECF No. 16.

On February 3, 2017, Plaintiff amended its complaint to include two more causes of action: a ninth claim for violation of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9607, and a tenth claim for violation of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6972(A)(1)(A)–(B). *See* FAC. On February 17, 2017, Galen Wooten answered Plaintiff's First Amended Complaint and asserted a cross-claim against Hammon Plating and a First Amended Third-Party Complaint against AMC. ECF No. 35. On April 3, 2017, AMC answered Galen Wooten's First Amended Third-Party Complaint. ECF No. 36. That same day, Hammon Plating answered Plaintiff's First Amended Complaint and Galen Wooten's cross-claim. ECF Nos. 37, 39.

On August 21, 2017, Plaintiff and Hammon Plating filed a stipulation stating that Hammon Plating is liable to Plaintiff on the first, third, fourth, ninth, and tenth causes of action in Plaintiff's First Amended Complaint (for breach of contract, violation of the HSAA, violation of the HSAA's notice requirement, violation of CERCLA, and violation of RCRA). ECF No. 51. Pursuant to this stipulation, the Court entered an order finding Hammon Plating liable on these causes of action on August 22, 2017. ECF No. 52. Then, on September 26, 2017, Plaintiff and Galen Wooten filed a stipulation stating that Galen Wooten is liable to Plaintiff on the same causes of action. ECF No. 61. Pursuant to this stipulation, the Court entered an order finding Galen Wooten liable on these causes of action on September 28, 2017. ECF No. 63.

On September 15, 2017, Plaintiff filed the instant motion for leave to file a second amended complaint. ECF No. 56. Hammon Plating opposed Plaintiff's motion on September 29, 2017, ECF No. 64, and Plaintiff replied on October 6, 2017. ECF No. 66.

## II. LEGAL STANDARD

Under Rule 15(a) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave [to amend] when justice so requires," bearing in mind "the underlying purpose of Rule 15 ...[is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc). Nonetheless, a district court may deny leave to amend a complaint due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008). Of these considerations, "it is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam). "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Id.* (emphasis in original). Nevertheless, a proposed amendment may be denied as futile "if no set of facts can be proved under the amendment to the pleadings that would constitute a

valid and sufficient claim or defense." *See Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988). Ordinarily, however, "courts will defer consideration of challenges to the merits of a proposed amended pleading until after leave to amend is granted and the amended pleading is filed." *Netbula, LLC v. Distinct Corp.*, 212 F.R.D. 534, 539 (N.D. Cal. 2003). The non-moving party bears the burden of showing why leave to amend should not be granted. *Genentech, Inc. v. Abbott Labs.*, 127 F.R.D. 529, 530–31 (N.D.Cal.1989).

## III. DISCUSSION

In the instant motion, Plaintiff seeks to add Stephen Sorenson ("Sorenson") as a defendant on the theory that Sorenson is an alter ego of Hammon Plating. ECF No. 56 at 2. Sorenson owns and controls AMC, which purchased all shares of Hammon Plating from Wooten in February 2015. Plaintiff explains that the instant motion is based in part on information disclosed by Hammon Plating's designated corporate witness, Wade Smith, during an August 7, 2017 deposition regarding Hammon Plating's financial information and sale of the 855 and 882 Commercial Street properties. *Id.* at 6, 10. Specifically, Plaintiff points to deposition testimony indicating that (1) Sorenson is "the principal or the owner of Hammon plating," ECF No. 56-1 at 7; (2) Sorenson directs certain payments from Hammon Plating's accounts, *see id.* at 9, as well as "large transactions," *see id.* at 13; (3) after AMC purchased all shares of Hammon Plating from Wooten, Sorenson caused Hammon Plating to sell the properties at 855 and 882 Commercial Street in August of 2015 for $3,850,000, *see id.* at 10–11; (4) although the "Seller's Estimated Settlement Statement" associated with that sale shows that $1,784,336.43 was to go to Hammon Plating as a result of the sale, an audit document with a "period ending December 2015" did not indicate that $1,784,336.43 "came into" Hammon Plating, *see id.* at 38; (5) Smith did not know whether the $1,784,336.43 was "used to help the profitability of Hammon Plating," and had never seen that money "applied to the Hammon Plating accounts" or in Hammon Plating's "cash or cash equivalents," *id.* at 13; and (6) Hammon Plating is planning to move its operations to "another facility in Santa Clara" owned by Sorenson. *See id.* at 40–41.

Based on this deposition testimony, Plaintiff seeks to allege in a Second Amended

6

Complaint that "during the time that Hammon [Plating] has known of the contamination of Plaintiff's 890 Property by Hammon [Plating], [Sorenson has] diverted substantial funds from Hammon [Plating] to himself on a regular basis such that Hammon [Plating's] assets are treated as [Sorenson's] personal property and its separate existence should be disregarded as to Plaintiff." ECF No. 56 at 14. Further, Plaintiff seeks to allege that Sorenson diverted at least $1.7 million of the proceeds of Hammon Plating's sale of the 855 and 882 Commercial Street properties to himself, which in turn has made Hammon Plating "unable to answer for its obligations" for the "substantial costs to clean up its contamination." *Id.* Thus, Plaintiff wishes to add Sorenson as an alter ego defendant because "[i]t would be inequitable for Sorenson to not be held accountable" for Hammon Plating's environmental cleanup obligations. *Id.*

Hammon Plating argues that Plaintiff's motion for leave to file a Second Amended Complaint should be denied because (1) Plaintiff "has unduly delayed pursuing its alter ego claim and bringing its motion to amend"; (2) Plaintiff's proposed amendment is futile; and (3) Plaintiff's amendment "has already caused prejudice to Hammon Plating." ECF No. 64 at 3, 4, 7. The Court addresses each argument in turn.

**A. Undue Delay**

Hammon Plating points out that "all parties have known of Mr. Sorenson and his connection to Hammon Plating all along." *Id.* at 3. Further, Plaintiff states that "initial disclosures were exchanged on February 1, 2017," and that "[f]ollowing Wade Smith's deposition [on August 7, 2017], Plaintiff waited until September 15, 2017" to file the instant motion to add Sorenson as a defendant. *Id.* Thus, Hammon Plating argues that "[t]hese delays are inexcusable and reason enough to deny leave to amend." *Id.*

However, even though all parties have known about Sorenson's connection to Hammon Plating all along, the instant motion is based on more specific details about the extent of Sorenson's control over Hammon Plating and the sale of the 855 and 882 Commercial Street properties—details that Plaintiff says it learned from Wade Smith's August 7, 2017 deposition. *See* ECF No. 56 at 10. Hammon Plating does not contend that these details were previously-

7
Case No. 16-CV-05908-LHK
ORDER GRANTING MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

known facts. Moreover, Plaintiff asked Hammon Plating to stipulate to the addition of Sorenson as a defendant, but Hammon Plating declined to so stipulate. ECF No. 56-1 ¶ 5. Although Plaintiff filed the instant motion a little over a month after Wade Smith's deposition, the Court does not find that this constitutes "a *substantial* delay in seeking leave to amend." *See Naranjo v. Bank of America, N.A.*, 2015 WL 913031, at *8 (N.D. Cal. Feb. 27, 2015) (emphasis added).

**B. Futility**

Under California law, to "satisfy the alter ego exception to the general rule that a subsidiary and the parent are separate entities, the plaintiff must establish a prima facie case (1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist; and (2) that failure to disregard [their separate identities] would result in fraud or injustice." *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir.2001) (internal quotation marks omitted) (alterations in original). Hammon Plating argues that allowing Plaintiff to file a Second Amended Complaint would be futile because Plaintiff's proposed Second Amended Complaint "does not plead facts sufficient to meet either requirement of the alter ego doctrine." ECF No. 64 at 5.

However, Plaintiff's proposed Second Amended Complaint alleges that (1) Sorenson has diverted funds from Hammon Plating on a regular basis "such that Hammon assets are treated as Sorenson's personal property"; and (2) Sorenson diverted over $1.7 million of the proceeds from Hammon Plating's sale of the 855 and 882 Commercial Street Properties "at a time when Hammon [Plating] [was] under an obligation to remediate its contamination of Plaintiff's" property at 890 Commercial Street, which in turn made Hammon Plating "unable to answer for its obligations" for the "substantial costs to clean up its contamination." *Id.* at 14. Because Plaintiff's proposed Second Amended Complaint appears to address both requirements of the alter ego exception, and because courts usually "defer consideration of challenges to the merits of a proposed amended pleading until after leave to amend is granted and the amended pleading is filed," *see Netbula*, 212 F.R.D. at 539, the Court finds that Plaintiff's amendment would not be futile.

8

### C. Prejudice

Hammon Plating appears to briefly argue that it has *already* been prejudiced because "the Court has already granted an extension of discovery . . . and reset all other dates in the case" pursuant to the Court's September 20, 2017 Case Management Order. ECF No. 64 at 7; *see* ECF No. 57. Hammon Plating asserts without further explanation that "[s]uch delay clearly constitutes prejudice." ECF No. 64 at 7.

Hammon Plating's conclusory objection to an extension that the Court has already ordered is not well-taken. Further, Plaintiff seeks only to add Sorenson as an alter ego defendant, and therefore does not seek to add or substantially change any causes of action. Thus, Plaintiff does not request any further changes to the case schedule. As a result, the Court finds that Hammon Plating has not met its burden of showing that prejudice would result from granting Plaintiff's motion for leave to file its Second Amended Complaint. *See Serpa v. SBC Telecomms., Inc.*, 318 F. Supp. 2d 865, 870 (N.D. Cal. 2004) ("The party opposing leave to amend bears the burden of showing prejudice.").

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's motion for leave to file a Second Amended Complaint to name Sorenson as an alter ego defendant. Plaintiff shall file a second amended complaint consistent with this order within three days.

**IT IS SO ORDERED.**

Dated: November 14, 2017

*Lucy H. Koh*
LUCY H. KOH
United States District Judge